PETERS BRANCH INTERNATIONAL SHOE CO. *v.* GUNN.

[83 South. 742, In Banc No. 20948.]

1. FRAUDULENT CONVEYANCE. *Sale of stock of goods in violation of bulk sales law is void.*

A sale of a stock of goods in violation of the Bulk Sales Law is fraudulent and void.

2. CREDITORS MAY RECOVER GOODS FRAUDULENTLY SOLD IN BULK OR
   HOLD THE BUYER FOR VALUE.
   Where a stock of goods was sold in violation of the Bulk Sales
   Law, a creditor may proceed against the property if it remains
   in the hands of the purchaser, or waive the tort and sue the
   purchaser for the value of the goods or he may pursue both
   remedies.

3. FRAUDULENT CONVEYANCE. *Disposal by buyer of goods fraudulently
   sold in bulk does not affect his liability.*
   The fact that the buyer of a stock of goods who had not complied
   with the Bulk Sales Law had disposed of them before the
   creditors' suit was filed, does not affect his liability for he stands
   in the position of a trustee of the property for the creditors.

4. FRAUDULENT CONVEYANCE. *Payment of proceeds of void sale in bulk
   to other creditors does not relieve buyer.*
   The application by the seller of goods in violation of the Bulk
   Sales Law, of the proceeds of the sale to the payment of some of
   his creditors, does not affect the buyer's liability to a creditor
   who had not received any of the proceeds.

5. FRAUDULENT CONVEYANCE. *Existence of other creditors not made
   parties does not affect right of complainant creditor.*
   A creditor may recover from the buyer of goods sold in violation
   of the Bulk Sales Law the full amount of his claim if it is
   less than the value of the goods, though there may be other
   creditors, not made parties to the suit, whose total claims
   greatly exceed the value of the goods.

APPEAL from the chancery court of Jones county.
HON. G. C. TANN, Chancellor.

Suit by the Peters Branch International Shoe Company against R. B. Gunn and H. P. Hurlbert. Decree for complainant against defendant Hurlbert, but in favor of defendant Gunn and complainant appeals.

The facts are fully stated in the opinion of the court.

*Chambers & Trenholm,* for appellant.

Appellant respectfully contends that it is entitled to a personal decree against appellee for the amount of its claim against the said Ewart & Hurlbert, with legal interest and all cost of the court, provided the

amount of its claim, without interest or costs, does not exceed the reasonable value of the goods which it claims were fraudulently transferred by its debtors to appellee; or that it is entitled to a decree against appellee for the value of the goods remaining in appellee's hands at the time the answer was filed, with interest and costs, the value of said goods being less than appellant's claim; or that it is at least entitled to a decree against appellee for what would have been its *pro rata* share of the proceeds of said sale. Since the several grounds assigned as error tends to the same result, that is a decree in favor of appellant and against appellee for a sum of money, we will consider them together.

Chapter 100 of the Laws of 1908, as construed and applied by the decisions of this court renders absolutely void as to the creditors such sale as is here shown to have been made. There are two questions, therefore, for determination in this case.

(1) Is the creditor to be without remedy because the fraud has been consummated without his knowledge? (2) Will the payment of the proceeds of a fraudulent sale to one or more of seller's creditors relieve the purchaser of his duty under the act?

If the first question be answered in the negative, there will be the further question as to whether the creditor is entitled to recover the full amount of his claim provided it does not exceed the reasonable value of the goods; whether he will be limited to the value of the goods remaining in the possession of the purchaser; or whether he will be limited to his *pro rata* share of the value of the goods involved in fraudulent sale, having regard for all of the other debts of the seller.

The learned chancellor entertained the view that the creditor was entitled to the remedy sought in his case as a general proposition, thus answering in the negative, the first question for determination; but that the

requirements of the Act had been met when the proceeds of the sale reached one or more of the creditors, thus answering the second question in the affirmative. We submit that he was right as to the first proposition, and wrong as to the second.

Taking up the first proposition: To hold that the creditors had no remedy because the fraud had been concealed until the goods had been resold by the purchaser, or so interminged with his own as to be beyond identification, woud be to permit the purchaser to profit by his wrong, a thing which will not under any circumstances be allowed by the courts of a civilized country. This proposition is too well settled to require the citation of any authority, as the contrary would disrupt society.

We have been unable to find a reported decision of this court where it was expressly held that the creditor could proceed in a court of equity, as in this case. However, in the case of *Zachery* v. *Meridian Fertilizer Factory*, No. 18343, this court, withut a written opinion affirmed a decree of the chancery courts of Leake County in favor of the Meridian Fertilizer Factory, the creditor and against Zachery, the purchaser. In a case exactly like the one at bar, with the exception that the purchaser alone was made the defendant to the bill, and no claim was made that the proceeds of the sale went to creditors. It is true the question raised in this case does not seem to have been raised in the Zachery case but a glance at the case of *Drug Company* v. *Manufacturing Company*, 113 Miss. 130, will show that this court raises such questions of its own motion. In that case this court held that the contract sued on was violative of the public policy, and that the plaintiff could not recover, notwithstanding defendant admitted the contract to be legal. The court very properly said that regardless of the wishes of litigants, it would not allow a recovery unless there was a legal right. Apply that rule to the Zachery

case. If the Fertilizer Company had no legal right to obtain a personal decree against Zachery in such a proceeding the supreme court should (and would) have of its own motion, denied a recovery, regardless of whether that specific question was raised or not.

If a creditor is not allowed to be allowed to pursue one whom the law had defined to be a fraudulent purchaser, simply because the fraud has been concealed so long that the goods have been placed beyond the reach of the creditors through the aid of a court of law, the main object of the Bulk Sales Law will have been circumvented.

Now if a court of law will avail the creditor nothing, will not a court of equity, which proceeds upon the theory that for every right there is a remedy (*Mobile, etc.,* v. *Davis,* 62 Miss. 271) be the only and the proper place to turn in such an emergency, one may ask upon what theory the court could hold the purchaser liable in such a case. We answer, upon the theory that he is a trustee in his own wrong for the benefit of the creditors, in that he has become the possessor of the goods through a fraud upon such creditors, and such goods were what the creditors were relying upon, so far as they might go, for the satisfaction of their claims. At all events such goods were liable at the suit of the creditors, until they had been sold in ordinary course of trade and in the case at bar the sellers being partners, could not even claim exemptions out of such partnership asset, under well known decisions of this court. Therefore if the purchaser, by his own improper act, places these goods beyond the reach of the creditors, and if he be not allowed to profit by his own wrong he must be held accountable as a trustee. That the court of equity is the proper place to compel an accounting by a trustee, there can be no question.

The statute and decisions make transactions like the one here under consideration *prima-facie* fraudulent and void, and if this *prima-facie* case is not overcome and

it was not overcome here, the fraud alleged and proven is absolute grounds for equity jurisdiction. We say, therefore, that regardless of a remedy at law, the creditor has a remedy in equity, and that the chancery court, if not the only forum, is proper forum for the determination of such a controversy.

As to the purchaser being a trustee for the creditors, we find that such a theory is supported by a number of states for the purpose of enforcing liability for the violation of similar Bulk Sales Law, in the state of Washington, under a similar Bulk Sales Law, with no direct trustee provision, the court of last resort held: "We also think that the object of this law was to hold the goods of debtor under such circumstances as a trust fund for the benefit of all the creditors, and to hold the purchaser in possession as a trustee for such creditors." There was no dissenting opinion. *Fitz Henry* v. *Munter* (Wash.), 74 Pacific, 1003; *Owoso Carriage Co.* v. *Sweet* (Texas), 179 S. W. 257. This case was approved by the Texas court of civil appeals in November, 1916, in the case of *Mercantile Co.* v. *Huges* (Texas), 189 S. W. Rep. 784; *Rubber Company* v. *Kaufman* (Neb.), 153 N. W. Rep. 585.

In another Nebraska case the court held: "One who obtains possession of a stock of merchandise in bulk in violation of the statute will be held to be a trustee for the benefit of the creditors of his vendor. *Mercantile Co.* v. *Barker* (Neb.), 138 N. W. Rep. 1133; *Kohn* v. *Fishbach* (Wash.), 78 Pacific, 199; *Tinsley* v. *Warehouse Co.* (Ga.), 64 S. E. Rep. 82; *Post* v. *Bird* (Florida), 9 So. Rep. 889.

We respectfully submit, therefore, that under the decisions cited, and under the practice in this state, a direct suit in chancery, by the creditor against the purchaser, affords the proper remedy in a case like the one at bar, and that the chancellor was correct in that the first proposition should be answered in the negative.

If such a remedy is allowed, then arises the question as to the extent of the recovery. The appellee objects to a decree against him to the full amount of appellant's claim, because he may be proceeded against by other creditors. Our reply to that is, that he can be proceeded against only to the extent of the value of the goods he received. His answer to another creditor's bill would be the same as the answer of a garnishee to a second garnishment, he has satisfied the demand against him in a prior proceeding. Suppose this was a direct garnishment proceeding such as sued in some of the other states mentioned? Could Gunn escape on the ground that some other creditor of Ewart & Hurlbert may garnish him later on. No. If the other creditor be too late it is not the fault of Gunn but the creditor. Equity aids the vigilant, not those who sleep on their rights. *Newman* ·v. *Morris,* 52 Miss. 402.

Furthermore, if such a matter be allowed to proceed in equity, other creditors may intervene and share *pro rata* up to the time of the distribution of the fund, and not be cut off upon the filing of a garnishment proceeding. This is more just to the other creditors then the judgment and garnishment method.

Hence the complainant in this case unless other creditors intervene, is entitled to so much of the value of the goods as may be necessary to satisfy his claim, with interest and costs the complainant established its claim against Hurlbert, and the purchaser admitted that the sale was not made in compliance with the statute. The statute does not require that all creditors join to defeat the sale, as such a requirement would be foolish. Those who do not desire to enforce their rights should not be compelled to do so; neither should those who did so desire suffer because others abandoned their claims.

To hold that the purchaser should not be compelled to answer except to the extent of the proportionate part

of the value of the goods as the creditor's claim bore to the total debts of the seller, would be to permit the purchaser to escape the penalty of his own wrong because some of the creditors, for some reason, did not pursue him; and to compel the diligent creditors to suffer to the benefit of the fraudulent purchaser because some other of the creditors were negligent or indifferent. Clearly the creditor will not be limited in his recovery to the value of the goods remaining in the hands of the purchaser when he is attacked. For these reasons we think the appellant is entitled to a decree against the appellee for the full amount of its claim, with interest and costs.

If the court agrees with us so far, there then follows the second proposition. that is to say, whether the purchaser is liable even though the purchase money has been paid to one or more of the creditors of the seller. We contend that to allow the purchaser to escape upon such a ground would be to defeat the very purpose of the law, of course, should the purchaser see that the purchase price (being the reasonable value of the goods) reached some one or more of the seller's creditors, the seller would be there prevented from personal profit by pocketing the money, but this act was not passed simply for the purpose of preventing a dishonest merchant from defrauding his creditors; it was and is intended to go very much further. By requiring notice a number of days in advance, stating the value of goods, the amount to be paid therefor, and the name of the purchaser, such notice to be given to every creditor which the seller might name in answer to the demand, or which the purchaser might discover by the exercise of reasonable diligence, the legislature clearly intended that every creditor should have an opportunity to protect himself in such manner as he might desire, or as the law might afford, to the end that all of the creditors should enjoy alike the proceeds of such sale. In other

words, to give the creditors an opportunity, in case such action were necessary, as where all the assets were being disposed of for a sum less than the total debts a case of insolvency, to obtain the aid of a court of bankruptcy or of a court of equity, where the rights of all parties might be protected. And whereby the purchaser would be equally protected, for in no way could he be thereafter compelled to pay a second time. To allow the purchaser to escape because the proceeds of sale had been paid to some of the creditors would be to establish a method by which the laws prohibiting preferential transfers might successfully be evaded.

If the remedy which the appellant seeks in this case should be denied, or if the defense of payment of the proceeds of the sale to some of the seller's creditors should prevail then the Bulk Sales Law of Mississippi, the law fostered by the very men who sell the goods to the merchants and who thoroughly appreciated the need, will have been enacted almost in vain.

We respectfully submit, therefore, that the appellee, the purchaser in this case, innocent of intentional wrong though he may be, should be held liable notwithstanding the fact that the purchase money went to some of the creditors; and that he should be held liable for the full amount of appellant's claim, with interest and all costs; and that as the amount may easily be computed from definite figures upon the face of the record, the decree of "the learned court below," in so far as it dismissed the appellee, should be reversed and that a decree should be entered here in favor of the appellant, and against the appellee, for the amount sought to be covered, with interest, and the cost of court.

To hold otherwise would be to weaken, if not entirely destroy, what is recognized to be one of the fairest acts ever put upon the statute books by the legislature of this state, and open the door to frauds which would forever blacken the character of Mississippi in the eyes of the commercial world.

*J. C. Hannah,* for appellee.

Appellant filed a bill in the chancery court for the purpose of recovering a personal decree against appellee on an indebtedness owing by Ewart & Hurlbert. Appellant did not represent or attempt to show that appellee ever contracted the debt, owed, or agreed to pay appellant a single, solitary cent.   In fact, the record conclusively shows that appellee did not owe appellant anything whatever.   Ewart & Hurlbert are the only ones that sustained any contractual relations to the appellant.   The chancellor held that appellee was not liable to appellant and appellant comes to this court, seeking to have the decree reversd.

The only reason that counsel for appellant assigns for asking the court to hold appellee personally liable to appellant is his failure to comply with the Bulk Sales Law.   It is admitted that the appellee in purchasing this stock of merchandise from Ewart & Hurlbert did not comply with this law, but I respectfully submit that there is nothing in the law that imposes a personal liability on this appellee for failing to comply with its provisions.   Certainly this law as construed by this court in *Moore Dry Goods Co.* v. *Rowe,* 97 'Miss. 775, 53 So. 626; 99 Miss 30, 54 So. 659; *Dean* v. *Bowes,* 110 Miss. 575, 70 So. 693, makes this sale absolutely void.   However, the decisions of this court have not gone to the extent of rendering appellee personally liable to the creditors of one who disposes of his property under a fraudulent conveyance.

Learned counsel refer to the *percuriam* decision in case of *Zachery* v. *Meridian Factory.* Counsel, however frankly admit that the question involved in this case was not raised in said case and consequently was not decided.

Learned counsel inquires if the creditor is to be without remedy because, fraud is consummated without his knowledge, and proceeds at considerable length to dem-

onstrate that the decision of the lower court in this case is erroneous by way of answer to this inquiry.

I respectfully submit in answer to this argument that there are numerous other remedies than the one pursued by appellant in this case. In fact, I submit that this is a most unusual procedure; and one that is certainly not contemplated or auhorized by the statute dealing with Bulk Sales.

I draw the court's attention to the fact that the only thing that appellant contends renders the appellee liable in this case is that Hurlbert made a fraudulent transfer of certain merchandise to appellee. The appellant was a creditor of Hurlbert's. He goes into the chancery court and asks for a personal decree against the purchaser of the merchandise, without even so much as showing that the seller thereof is insolvent or has not sufficent property to satisfy the demands of the appellant.

As above pointed out, our court in its former decision has held that a sale of merchandise in Bulk without a compliance with the provisions of the Bulk Sales Law is absolutely void. Justice SMITH in the case of *Moore Dry Goods Company* v. *Rome, supra,* rendered a dissenting opinion, holding such sales only *prima facie* void, and supporting his decision with numerous authorities. The views entertained by Justice SMITH as expressed in that case have been expressly approved by the supreme court of the state of Alabama in *Johnson Bros.* v. *Washburn,* 77 So. 461; *Hart* v. *Roney,* 93 Md. 432, 49 Atl. 66; *Williams* v. *Banks,* 15 Okl. 477, 83 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970; *Gilbert* v. *Gonyea,* 103 Miss. 459, 115 N. W. 640; *Fisher* v. *Herrmann,* 118 Wis. 428 95 N. W. 392; *Baumeister* v. *Fin,* 141 Ill. App. 372; *Sprintz* v. *Saxon,* 126 App. Div. 421, 110 N. Y. Supp. 585.

Appellee contends that the presumption of fraud arising in a transaction of this kind from a nonobservance of the provisions of the Bulk Sales Law can only be overcome by evidence tending to show compliance with

the law. Some courts have given judicial sanction to this
contention. *Moore* v. *Rowe,* 97 Miss. 775, 53 So. 626;
*Moore* v. *Rowe,* 99 Miss. 30, 54 So. 659, Ann. Cas. 1913 c,
1213, being the principal authority favorable to appel-
lant's contention. While we regret to have such distin-
guished precedent opposed to our conclusion, we are of
the opinion that the weight of authority as well as sound
reasons, is opposed to such holding, and that the dissent-
ing opinions in the line of cases that support appellant's
contention are sound expositions of the law. Authorities
*supra.* If the construction urged by appellant is placed
on the act in effect it becomes an act that absolutely in-
validates, as being *per se* fraudulent, all sales made in
want of conformity thereto. It has been declared by em-
inent authority that an act so arbitrary and drastic is
unconstitutional. *Wright* v. *Hart,* 182 N. Y. 330, 75 N. E.
404, 2 L. R. A. (N. S.) 338, Ann. Cas. 263; *Off & Co.* v.
*Moorehead,* 235 Ill. 40, 85 N. E. 264, 20 L. R. A. (N. S.)
167, 126 Am. St. Rep. 184, 14 Ann. Cas. 434.

The case at bar renders a striking illustration of the
soundness of the views entertained by Justice SMITH.
The record in this case shows that the seller represented
the buyer that he owed seven hundred and fifty dollars or
or eight hundred dollars in debt. That as soon as the
stock of merchandise was sold and the money paid over
that he was going to pay these debts; that the purchaser
of the merchandise paid all that the merchandise was
worth not only the money paid by the purchaser, but a
great deal more, was actually paid to the creditors of
the seller. That in fact here was no fraud whatever prac-
ticed, either by the buyer or the seller. Suppose as sug-
gested in the authority last cited that the purchaser of
this stock of merchandise had made demand on the seller
as provided in the Bulk Sales Law for the names, ad-
dresses and amounts due each of his creditors, to which
the seller had responded that he had no creditors and did
not owe anything. That the purchaser, accepting said

statement in good faith, had paid the purchase price to the seller, certainly the sale would not be fraudulent and void under such circumstances. Then why should it be void under the circumstances attending this particular transaction?

Learned counsel in their brief point out the holdings of some of the courts of the other states with reference to the liability of purchaser under the Bulk Sales Law. I respectfully submit that these authorities in reality have no bearing whatever on the case at bar. In the first place, the Bulk Sales Law· as adopted by the respective states, is not at all uniform, some of these laws providing the remedies and others not. The decisions of the courts of last resort of the several states are likewise by no means uniform. As pointed out in learned counsel's brief some courts hold that the purchaser may be held liable as a trustee, while on the other hand many courts hold to the contrary. In the case of *McGreenery* v. *Murphy*, 76, N. H. 338, 82 Atl. 720, 39 L. R. A. (N. S.), 374, it is held that such sales are absolutely valid unless they are set aside by some creditor and that suit in equity will not lie. To this case there is an extended note.

If this court is to be persuaded or controlled by the decisions of other courts, I respectfully submit that it should approve the holding of Justice SMITH as contained in the dissenting opinion above referred to for the reasons expressed in *Johnston Bros.* v. *Washburn, supra,* wherein the court says "while we regret to have such distinguished precedent opposed to our conclusion, we are of the opinion that the weight of authority, as well as sound reason is opposed to such holding, and that the dissenting opinions in the lines of cases that support appellant's contention are sound expositions of the law. "In fact, the Bulk Sales Law, as adopted by the many states divided themselves into two general classes. One where the statute expressly declares the sale void; the other, where the law makes it presumptively void.

The legislature of our state followed the latter course. I respectfully submit that in view of the two distinct courses that have been followed by the legislature in making these laws, that the decision of this court does not conform to the expressed contention of the legislature. In support of this theory, I direct the court's attention to the extended note to the case of *Everett Produce Co.* v. *Smith,* 2 L. R. A. (N. S.), pg. 331, and especially to paragraph 'e' of said note found on page 340, which is as follows: In *Hart* v. *Roney,* 93 Md. 432, Atl. 661, the statute construed (Md. Laws 1900, Chap. 579, p. 907) was very similar in most of its provisions to the Indiana Statute of 1901, but the sale was only presumed to be fraudulent and void. To the contention that the sale was fraudulent and void, because the parties failed to meet the requirements of the act the court replied: "we do not, however so construe the statute." It says such sale 'will be presumed to be fraudulent and void,' unless, etc."

The appellant complains because the chancery court did not award to appellant a personal decree against the appellee for the entire indebtness due appellant. Appellant's claim is for four hundred dollars. The facts show that the stock of merchandise purchased by appellee was worth only five hundred and sixty dollars. That he had already paid this amount. That this money has gone to the creditors of the seller. The record further shows that the total amount that was owing by the seller on his small stock of merchandise was some three thousand dollars.

As a matter of fact, if the seller and buyer of this stock of merchandise had complied with the Bulk Sales Law and the buyer had paid his money over to the seller at the expiration of five days, the seller could have done with this money exactly what he has done, namely, paid it to such of his creditors as he saw fit. If the value of this stock of merchandise has already been paid to the creditors, why should the purchaser be

called upon to pay its value, or practically so, to this one creditor? If appellee could answer in another suit that he does not owe anything because he has paid to this creditor, why can't he answer in this case that he is not liable because his money has been paid to other creditors.

I respectfully submit that in truth and in fact this sale is not fraudulent and void and that this court should now approve the dissenting opinion in the case of *Moore Dry Goods Co.* v. *Rowe,* and I further submit that even if this court adheres to the rule as announced by the majority opinions in the former cases, that the decree of the chancery court is correct and proper because this appellee is not in any sense personally liable to appellant, and that this case should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellant, complainant, filed a bill in the chancery court of Jones county against H. P. Hurlbert and R. B. Gunn, alleging in substance that the defendant Hurlbert, while engaged in the mercantile business with his partner, became indebted to complainant for merchandise in the sum of four hundred, three dollars and thirty-five cents, which amount is past due and unpaid, and that Hurlbert and his partner, though requested so to do, have declined and refuse to pay the same; that their stock of merchandise was sold to the defendant R. B. Gunn in bulk in violation of the Bulk Sales Law (chapter 100, Laws 1908; sections 3129, 3130, 3131, 3132, Hemingway's Code); the violation consisted in the failure of Gunn to demand and the failure of Hurlbert to furnish, at least five days before the sale, the name, place of residence, and post office address of each of the creditors of the said firm, and the amount due each, and that the said Gunn did not in good faith notify personally or by mail each of the creditors of the

mercantile firm of which the said Gunn had knowledge, or with the exercise of reasonable diligence could have acquired knowledge, of the proposed sale and the cost price of the merchandise proposed to be sold, and the prices to be paid therefor by the said Gunn; that because of this violation the said sale to Gunn is fraudulent and void as against complainant; that complainant is not advised of the value of the stock of goods sold to the said Gunn, nor of the date of the sale, nor the terms upon which it was made, nor how much of the stock of goods originally purchased by Gunn now remain in his possession. The bill prays for a discovery as to the inventory of the goods, the value of them, whether or not the Bulk Sales Law was attempted to be complied with, and the prices paid or to be paid by Gunn, and the amount of this merchandise now remaining in Gunn's hands. Complainant prays for a personal decree in its favor against Hurlbert and Gunn for the amount of complainant's claim against Hurlbert and his partner, and for other and general relief.

The defendant Hurlbert failing to answer the bill, a *pro confesso* and final decree were taken against him.

The defendant Gunn in his answer admits the purchase in bulk of the stock of goods from Hurlbert and his partner and that he had been in possession of them since he purchased them, selling and disposing of them in due course of trade. He attaches a copy of the bill of sale executed to him. He admits the violation of the Bulk Sales Law with reference to demanding the names, etc., of the creditors of Hurlbert and partner, and the failure to notify these creditors, etc. He alleges that he paid in cash for the stock of merchandise to Hurlbert and partner the sum of five hundred and sixty dollars; that Hurlbert and partner represented to him that they owed to other mercantile creditors some seven hundred and fifty or eight hundred dollars, and that they intended to take this money and the proceeds

from other personal property and satisfy all of their outstanding indebtedness; that Hurlbert and partner used and appropriated all of the money paid them by Gunn to the payment of their creditors, and as a matter of fact paid to other mercantile creditors over one thousand, seven hundred dollars; that the amount paid for the stock of merchandise, namely five hundred and sixty dollars was the actual, fair cash value of the stock of merchandise; that it was all paid to some of the creditors by the vendors, and therefore the defendant Gunn should not be held liable to any of the creditors of this mercantile firm. The answer states on information and belief that Hurlbert and partner owe various and sundry creditors over three thousand dollars and that, if Gunn is liable for any amount to the complainant, he is only liable for such ratio as the total sum due complainant bears to the total indebtedness. The defendant Gunn then makes his answer a cross-bill by praying that, if he is adjudged to be indebted to the complainant, he be allowed to recover from his codefendant, Hurlbert, for this amount. It was then agreed between counsel that the case be tried upon bill and answer, and that the facts alleged therein be considered as substantially correct as stated, and that said bill and answer be considered as evidence.

The final decree of the lower court adjudged that the sale was made in violation of the Bulk Sales Law; that the amount paid by Gunn to Hurlbert was the reasonable value of the goods; that, since the proceeds of the sale were paid by Hurlbert to some of his creditors, though no part was paid to the complainants, it was ordered and adjudged that the complainant recover nothing from the defendant Gunn, but was allowed a personal decree against Hurlbert in the sum of four hundred and seventy dollars with interest.

The appellee, Gunn, admits that the sale was a violation of the Bulk Sales Law, but contends that the

lower court was correct in dismissing the bill as to him. First, because no personal decree should be rendered against the appellee in this proceeding; second, that appellee paid the market price for the stock of merchandise, and this money was paid to some of the creditors by Hurlbert.

A sale in violation of the Bulk Sales Law is fraudulent and void. *Moore Dry Goods Co.* v. *Rowe,* 97 Miss. 775, 53 So. *Id.,* 99 Miss. 30, 54 So. 6659, Ann. Cas. 1913C, 1213.

The bill in this case is in the nature of a creditors' bill filed against both parties to this fraudulent and void sale seeking to recover the amount of the indebtedness due complainant. The complainant had the right to proceed against the property if it remained in the hands of the fraudulent vendee, or, if disposed of by the fraudulent vendee in whole or in part, he may be held liable for its value; in other words, the creidtor had the right to proceed against the property, or he may treat the transactions as a tort against the property which should have been subjected to his debt, which in this case was less than the value of the property; he may thus waive the tort and sue the fraudulent vendee for the value of the property, or he might pursue both remedies. This proposition is set forth in the case of *Daly* v. *Sumpter Drug Co.,* 127 Tenn. 412, 155 S. W. 167, Ann. Cas. 1914B, 1101.

The fact that the appellee, Gunn, had disposed of a part of this property before the suit was filed makes no difference. Having acquired the property through fraudulent and void sale as to the creditors of the fraudulent seller, he stands in the position of a trustee of the property, responsible to the creditors for the disposal of such property. *Appel Mercantile Co.* v. *Barker Dry Goods Co.,* 92 Neb. 669, 138 N. W. 1133; *Fitz Henry* v. *Munter,* 33 Wash. 629, 74 Pac. 1003; *Rubber Co.* v. *Kaufman,* 98 Neb. 562, 153 N. W. 585.

The fact that the fraudulent vendors of the property applied the proceeds of the sale to the payment of some of the creditors does not discharge this debt as to either defendant. The sale was fraudulent and void and amounts in law to no sale at all. So far as the unpaid creditors are concerned, there has been no sale, but the property which they could have subjected to the payment of their debts has been unlawfully converted to the use of the defendant Gunn.

The answer of the defendant suggested that there were other creditors of the fraudulent vendors, but these creditors were not made parties to this suit, nor have they voluntarily intervened as such. Under the record in this case the appellant is entitled to recover against the defendant Gunn the amount of the debt due it, namely four hundred, and seventy dollars. This is less than the fair market value of the stock of merchandise attempted to be purchased by appellee.

*Reversed, and desree here for appellant.*