FRADY *v.* BRYAN, et al.

Division A. Oct. 23, 1950.

No. 37602 (48 So. (2d) 133)

Suggestion of Error Overruled November 27, 1950 (48 So. (2d) 611).

(1)

James T. Bridges and C. M. Murphy, Jr., for appellant.

4

North & North and **W. D. Womack,** for appellees.

**Coleman, C.**

This case chiefly involves receivership proceedings in the chancery court which were instituted by appellee, and to the institution of which appellant consented. Because of the many claims, pleadings, and invoices filed, the record consists of four volumes.

Appellant presents 103 assignments of error. No novel question of law is presented and discussion of the multiple points raised would not, in our opinion, add to the ample precedents already existing. Suffice it to say that upon due consideration we are convinced that the chan-

cellor committed no error of law, and, as to disputed questions of fact, his findings instead of being manifestly wrong are shown by the record to have been manifestly right.

Affirmed.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and, for the reasons therein indicated, the case is affirmed.

The opinion on the Suggestion of Error is as follows:

McGehee, C. J.

On October 23, 1950, we affirmed, without a dissenting opinion, a decree of the chancery court in the above styled cause, after the case had been fully argued and understandingly presented to the conference by one of the judges and checked and thereafter reported on by another.

On this suggestion of error it is contended by counsel for the appellant that this affirmance of the decree will "open wide the gates to such a state of affairs that business men will be forced to protect their business and property with warfare and bloodshed, . . . will cause the citizens of this great state to lose their faith in the courts of justice, . . . will cast a very serious doubt as to the integrity and value of lawyers to those citizens who have suffered serious wrongs. . . . will overrule all the long established and well founded precedents in this state and in this country in respect to the right of one citizen to take the property of another." That affirmance of the decree will ignore the reasons which caused this country to declare its independence, and that all the guaranties in the federal and state constitutions will likewise be ignored. And the statement is made that every attorney to whom the facts of this case have been referred has unhesitatingly stated that the

decree of the chancellor must be reversed, and that "not a single lawyer, among which number are the best in Mississippi, has ever suggested that the decree below would or should be affirmed."

It is not shown, however, that the attorneys referred to have carefully read the record of approximately 800 pages now before us and the nearly 300 pages of briefs submitted to us on this appeal. ██ █ At any rate we cannot be governed by any plebiscite that may be held among the members of the bar as to how a case should be decided here. It is gratifying to note that at least the suggestion of error does not declare that the affirmance of the trial court decree would destroy the American way of life, our cherished traditions and institutions, or inevitably involve us in another all-out world war. Neither do counsel contend that our former decision herein will further endanger the national economy by bringing about the establishment of a welfare state so as to thereby speed up the trend toward national socialism, nor that it will even cause the presence of fewer "Byrds in Congress" to warn us of the urgent need for greater economy in governmental expenditures. This fact is indeed heartening when we pause to contemplate the other dire consequences that are prophesied to result from our affirmance of the decree appealed from.

Nevertheless, a re-examination of the record and a careful study of the original briefs and the 105 page brief filed on this suggestion of error, discloses that there is nothing very complicated about the legal principles involved, and the appellant frankly concedes that there is no disputed issue of fact in the case. And although both the record and the briefs are very voluminous, the issues for decision are quite simple.

The facts are that the appellant Fred Frady purchased from C. B. Jones the equipment and fixtures, oil and gas, and whatever stock of merchandise that was being used by Jones in the operation of a gasoline filling station; that the sale was in violation of Section 274, Code

of 1942, known as the Bulk Sales Law, and therefore absolutely void as to creditors, the requirements of the statute being applicable to a sale of a filling station, as well as to the sale of other businesses. B. F. Goodrich Rubber Co. v. Breland, 170 Miss. 117, 154 So. 303.

The appellant, therefore, received that which he had attempted to purchase, as a trustee thereof and subject to the right of the creditors of Jones to subject the same to the payment of their claims, and to hold him liable as purchaser for any portion of the property that he may have converted to his own use. Peters Branch International Shoe Co. v. Gunn, 121 Miss. 679, 83 So. 742; Orgill Bros. v. Gee, 152 Miss. 590, 120 So. 737.

G. D. Bryan, the operator of a bulk sales station as agent for the Arkansas Fuel Oil Company, was a creditor of Jones at the time of the sale, by reason of the fact that under his contract with the Arkansas Fuel Oil Company, which was introduced in evidence, it was disclosed that all sales made by the agent to any un-approved customer, such as Jones was, resulted in Bryan becoming the creditor of the customer instead of his principal being such creditor. In other words, the company contracted in effect that it was not to become the creditor of such a customer but would be entitled to collect for the sales from the said Bryan if he should see fit to extend credit to such a customer. The contract made the invoices of the sales to Jones competent evidence even though they were erroneously made out in favor of the Arkansas Fuel Oil Company. Anyway the suit was not against the debtor Jones on open account, but against the purchaser from the debtor to subject the property in question to the payment of a creditor's claim.

G. D. Bryan filed his suit to subject the property purchased by the appellant from the debtor Jones to the claim of Bryan against Jones in the sum of $1,647.87. The appellant Frady, upon learning that his purchase was void under the Bulk Sales Law, returned to his home at Greenwood and left the place of business in charge of

his agent Killen at Belzoni to operate, after the former had converted some of the property to his own use. With the consent of this agent Killen, it appears that some gasoline was drawn from the tanks by the creditor Bryan, with the assistance of the agent Killen, and as a safety precaution, and for which gasoline Bryan gave him a credit memorandum in the sum of $12.32; that the agent, having closed the station for want of funds to meet the payroll, and for the reason that he did not know what other course to pursue, since his employer Frady could not then be located for advice in the premises, turned over the keys to the creditor Bryan, who caused other keys to be made so as to keep the premises locked to prevent theft of the property and for the protection of his rights and those of other creditors pending the appointment of a receiver. Bryan did not convert any of the property to his own use as contended for by the appellant except the fifty-three gallons of gasoline above referred to and for which he gave credit. He committed no intentional trespass in so doing, but merely acted with prudence under the circumstances for the protection of the property pending the orders of the court.

Thereafter, a number of other suits were filed by creditors and a receiver was appointed to take charge of the property. The record affirmatively shows that the appellant made no objection to the appointment of a receiver nor to the selection of the receiver who was appointed. The several claims of the creditors were allowed by the trial court, and the property left on hand at the time the filling station was closed was ordered to be sold for the purpose of applying the proceeds to the payment of claims, including the preferred claims as to city and county taxes and the cost of the receivership. The property brought at the sale the sum of $2,750, but the proof was sufficient to disclose that the property purchased by the appellant was worth the fair value of from $3,600 to $3,700, and to warrant the chancellor in finding that it was worth at least $3,500.

At any rate, we would not be justified in holding that the chancellor's finding in that behalf was manifestly wrong.

After the cost of the receivership, taxes, etc., were paid, there was a net balance left for the creditors in the sum of $2,219.26, and some of the creditors sought and obtained a deficiency decree for the difference between what they received pro rata on their claims and the total amount of the claims, the amount of the deficiency decrees and the $2,219.26 being less than $3,500. The decree provided that the failure of the other creditors to sue for a deficiency decree would not prejudice their right to do so later. Whether this provision was erroneous in that it may have amounted to permitting these other creditors to split their causes of action does not call for a reversal of the decree since they may never undertake to assert a deficiency claim, and whether they will have a right to hereafter assert such claims can be determined if and when they should undertake to do so. They had the right on the trial of this cause to participate in the distribution of the proceeds of the sale and to impliedly waive their right to a deficiency decree, and we pretermit any opinion as to whether or not they have waived such right until such time as they may attempt to assert the same. This point was not assigned as error on the original presentation of the case here, and is not therefore entitled to be considered when raised for the first time as a new point on suggestion of error.

█ █ It has been the contention of the appellant throughout the pendency of this appeal that none of the creditors were entitled in any event to a deficiency decree, the contention being based on the alleged ground that the appellant did not convert the property to his own use but that the creditor G. D. Bryan took charge of and converted the property as a trespasser, and which contention the chancellor found was not well founded, and we think correctly so.

■■■ The appellant further contends that the trial court was in error in permitting an amendment to the bill of complaint of the Belzoni Auto Parts by the substitution of the name of Brumfield & Townsend, Inc., as complainant. The proof disclosed that the latter was doing business as Belzoni Auto Parts, and we do not think there was a substitution allowed of one complainant for another, the former and the latter being the same business concern.

As to whether the appellant was liable for only the difference between the $2,750, which the property brought at a forced sale, and the $3,500 valuation placed on the property by the chancellor under the testimony, instead of the difference between $2,219.16 as net proceeds and the sum of $3,500, ■■■ we do not decide for the reason that this point was not assigned as error among the 103 grounds of alleged error on the original presentation of the case before our affirmance of the decree appealed from on October 23, 1950. Moreover ■■■ we are unable to say that the trial court was in error in allowing the cost of the receivership to be deducted from the price of $2,750 brought at the sale made by the receiver, since he may have been warranted in finding that the action of the appellant in virtually abandoning the property brought about the necessity for the receivership for its protection, notwithstanding the rule as to the measure of the liability of a purchaser at a sale in violation of the Bulk Sales Law as announced in 37 C. J. S., Fraudulent Conveyances, § 484, page 1352, and 24 Am. Jur. 366, Section 263.

Therefore, after a full consideration of the suggestion of error, and a careful re-examination of the record and all of the briefs, we are of the opinion that the decree appealed from is correct in all material particulars, and that the suggestion of error should therefore be overruled.

Suggestion of error overruled.