## ILLINOIS CENT. R. CO. *v.* ASH.

[91 South. 31.   No. 22436.]

RAILROADS.  *Injury to trespasser during storm held not actionable.*

A railroad company owes no duty to a trespasser on its track, except not to willfully or wantonly injure him after discovering his presence there, and where a trespasser, who was walking on the track during a severe storm, was killed by a passenger train, and the engineer and fireman testified that on account of the torrential rain which was being driven against the windows of the cab, and the accumulation of mist and water on the glass of these windows, their view was entirely obstructed, and it was impossible to see a person on the track, and that for that reason they could not and did not see the deceased on the track, and where all the facts and circumstances of the killing are in evidence, and there is nothing in the evidence to contradict or discredit the testimony of the engineer and fireman, the jury should be peremptorily instructed to find for the defendant.

APPEAL from circuit court of Panola County.

Action by Molly Ash, for herself and children, against the Illinois Central Railroad Company, for damages for the negligent killing of her husband. From a judgment for plaintiff, the defendant appeals. Reversed, and judgment for the defendant.

*May, Saunders & McLaurin,* for appellant.

The Refusal of the Peremptory Instruction Requested by Appellant. The proof shows without contradiction that at the time the deceased was killed he was a trespasser, and the only duty that the appellant owed to him was not to wilfully or wantonly injure him, if, and when, his position of peril was discovered. If the perilous position of the deceased on the track was not discovered by the engineer, then he was guilty of no negligence in the operation of the train. His failure to attempt to give warning to the deceased and his family, or to make an attempt to

stop the train cannot be imputed to him as a fault. The engineer was under no duty to be on the lookout for the deceased, but he and the fireman, as they were endeavoring to keep a lookout, did not and could not see the deceased on the track, by reason of conditions over which they had no control—a violent storm, which was the act of God. The engineer testified without equivocation and without contradiction, that because of weather conditions he could not see the pilot of his engine. Under these circumstances, the rule of law applicable to the facts is too well settled to justify extended discussion.

The most recent announcement of the law in such cases, we believe, is to be found in the case of *Hubbard* v. *Southern Ry. Co.,* 83 So. 247. This court in that case, speaking through ETHRIDGE, J., announced in unmistakable language the settled rule of law regarding the duty of a railroad company toward trespassers, as follows: "He was a trespasser upon the track of the defendant and the defendant owed him no duty except not to wilfully or wantonly injure him after discovering his presence on the track. The testimony is undisputed that the engineer and fireman did all they could to stop the train before the injury, after they saw the plaintiff but could not do so."

The court decided that under the circumstances there shown, the railroad company was entitled to a peremptory instruction. The same rule has been announced in the following well considered cases: *Fuller* v. *I. C. R. R. Co.,* 100 Miss. 705, 56 So. 783; *Ala. etc. R. R. Co.* v. *Daniel,* 108 Miss. 358, 66 So. 730; *Yazoo, etc., R. Co.* v. *Smith,* 111 Miss. 471, 71 So. 752; *N. O., etc., R. Co.* v. *Harrison,* 105 Miss. 18, 61 So. 655.

There is nothing in the record that warrants the assumption that the engineer either wilfully or wantonly injured the deceased. The accident happened in the country, not at a crossing, and under such circumstances as warranted the trial court in peremptorily charging the jury that the deceased was a trespasser, and this being true, it must likewise be true that the court ought to have given the peremp-

tory instruction to the jury to find for the defendant, because of the absence of any testimony indicating that the engineer was guilty of either wantonness or wilfulness. The engineer and his fireman both testified that the water, steam and mist immediately in front of the engineer were so great as to completely obscure his vision. This was not contradicted, and this being true, the fact is established that he did not see the deceased on the track and could not, and under these undisputed facts the defendant was entitled to the peremptory instruction. This is not a case of an injury as a crossing or in a municipality, but it was out in the country a mile and a half from the nearest town.

*J. F. Dean,* for appellee.

Upon the record in this cause, it occurs to us that there is but one point at issue in this court, and that is covered by appellant's third assignment of error: "That the trial court erred in refusing a peremptory instruction for the defendant."

This court has said that it is a rare case of negligence that will be taken away from a jury. It is also a well-established rule of this court, that a peremptory instruction should never be given, where there is material conflict in the testimony. Where the testimony is conflicting, it is for the jury to say and not for this court, what weight should be given to that testimony. Is there testimony in this case, which if believed by the jury would entitle the plaintiff to recover? If so, this cause should be affirmed. While we do not agree with the trial court that Henry Ash, deceased was a trespasser, but we contend that he was a licensee, *Dillon* v. *I. C. R. R. Co.,* 111 Miss. 520, yet, we shall argue this case as though he were a trespasser, adopting the court's idea.

If Henry Ash was a trespasser, we admit that the railroad company owed him no duty. They were under no duty to keep a lookout. But if as the engineer and fire-

man both testified that they were maintaining a lookout, then they owed him the duty not to wilfully or negligently injure him, after his position of peril was discovered.

This court having said in *Harrison* v. *Railroad Co.,* 93 Miss. 40, in a case very similar to this: "Questions for the solution in this case, is, whether the engineer did see or, under the circumstances, ought to have seen the child in time to have avoided the injury and this testimony was valuable in solution of that question." If in this case the engineer and fireman were on the lookout as they claimed they were, then the question is, did they see, or under the circumstances, ought to have seen, the deceased in time to have avoided the injury.

In the case of *N. O. & M. R. Co.,* 61 So. 55, is a case where a man was in drunken stupor asleep on the track and was killed by appellant's train. The engineer testified that he was on the lookout and did not see the man until he was seventy-five yards from him, when he did everything possible, to avoid the accident. Several other witnesses testified that they had made experiments to ascertain how far the deceased could have been seen, lying on the ground as the engineer said he was, when he was run over and killed. These witnesses stated that standing on the ground, the deceased could have been seen and recognized by them as a man while they were two hundred yards away. Although this man, was guilty of the grossest carelessness the grossest kind of contributory negligence, a trespasser, drunk on appellant's track, still the court held that this testimony was sufficient to take the case of plaintiff to the jury.

In the case at bar, the engineer testified that he did not see, could not see beyond the pilot of his engine, and that he did not and could not see the deceased, that he was on the lookout, other witnesses state that, standing on the ground that they distinctly saw the deceased lying on the ground and the train passing over him at a distance of two hundred yards. The engineer testified that when backing up, that it was a physical impossibility on account of the rain for him to see the rear of his train. Yet the flag-

man says that fifty feet in advance of the rear end of the train he could see and did see the engineer, and the engineer could see and 'did see him, accepted his signals, recognized them and handled his train accordingly. That he, the flagman, saw the deceased lying on the track a hundred yards before he got to him. This we contend makes a direct issue of fact, as to whether or not the engineer could have seen, should have seen, and did see the deceased in time to have avoided the injury. The jury found that he did see or could have seen, or else their verdict was contrary to the instructions given them by the court.

This court has held in *Railroad Co.* v. *Hawkins,* 82 Miss. 211, that if the engineer was on the lookout as he says he was, he must have seen the men and the dogs, the jury manifestly thought that he either did see them or that he should have seem them by a proper lookout in entering so dangerous a piece of road. There is no pretense that he was engaged about his engine. One toot of his whistle would have in all probability prevented the damage. From the evidence, the jury must have thought that he did see and in that case the carelessness was so gross as to be tantamount to design. If the court will hold as above in reference to the death of a dog, would not the same law apply to the death of a human being?

Here the train was approaching a populous town, over a track constantly used by pedestrians, in a storm, running from thirty to thirty-five miles an hour, and if the engineer had been on the lookout as he said he was, the jury had a right to say, that he either saw or should have seen the deceased, and that one toot of his whistle would have saved the life of Henry Ash.

In the case of *Jamison* v. *I. C. R. R. Co.,* 63 Miss., the court granted the railroad a peremptory instruction because the brakeman said he was keeping a lookout and did not see the child. Other witnesses testified and the court held that the jury would have been justified in finding from their evidence that he did see the child. It is true that Jones denied that he saw them, but whether he did or

not was a question of fact to be decided by the jury. See *Fuller* v. *Railroad Co.,* 65 So. 783; See, also, *G. & S. I. Railroad Co.* v. *Boone,* 82 So. 335; *Southern Railroad Company* v. *Daniel,* 108 Miss. 358.

In the instant case the engineer denied ever seeing the deceased and admitted he did nothing to prevent the injury. Then, with his testimony discredited, there is nothing to meet the *prima-facie* statute, for there is nothing to show what the railroad company's servants were doing at the time of injury. *Fuller case,* 100 Miss. 705, says in substance: "The record is silent as to what those in charge of the train saw or did. That even though a cloud of witnesses were present and saw the accident, though the injured party were a trespasser, and the railroad company owed him no duty, this is not sufficient to take the case from under the *prima-facie* statute, and if the railroad company · failed to introduce testimony, showing what was done, seen or could have been done and seen by them, whereby from all of the testimony, its negligence *vel non* may be inquired into, then upon a peremptory instruction for the railroad company, it will be reversed. This case also holds, that if the injured man were a licensee, he is entitled to more care than if he were a trespasser.

COOK, J., delivered the opinion of the court.

Appellee, Mollie Ash, for herself and children, instituted this suit against the Illinois Central Railroad Company seeking to recover damages for the negligent killing of her husband, Henry Ash, and from a judgment in her favor for the sum of two thousand, three hundred and nine dollars and nine cents, this appeal was prosecuted.

The pertinent facts as disclosed by the record are as follows: Henry Ash, sixty-five years of age, was instantly killed by a northbound passenger train of appellant, at a point about one and a half miles south of Sardis, Miss., at about 3 o'clock in the afternoon, while a very severe wind, hail, and rain storm was raging. The deceased, his wife,

Mollie Ash, his daughter, Gertrude Ash, and his daughter's two children, were working in a field adjacent to the railroad track when signs of an approaching storm caused them to leave the field and start for their home about a half mile north of where they were working, and in going to their home they chose the railroad track, which was the shortest and best route. While the storm of wind, hail, and rain was at its worst stage, these parties were traveling north along the railroad track and facing the storm; Gertrude Ash and her children being in front, Mollie Ash some distance behind Gertrude, and the deceased a number of yards further to the rear. The deceased was walking in the middle of the track, with his head down and his hat pulled down over his ears and eyes, and at this juncture the northbound passenger train ran over him, killing him instantly.

The plaintiff's testimony was to the effect that no alarm was sounded and no effort made to stop the train, which ran about a half mile before stopping. Mollie Ash testified that, on account of the noise of the storm, she did not hear the train approaching, and that by accident she looked back and discovered the train, but too late to warn deceased of his peril, and she described the location and position of the deceased at the time he was struck. The deceased was not at or near a crossing when he was struck, and while there was testimony that pedestrians made frequent use of the railroad at this point as a walkway, the proof was to the effect that the railroad was used in about the same way and to the same extent as people are accustomed to use a railroad track where it is the most convenient and best route available.

The engineer and fireman testified that at the time the deceased was struck a very severe storm was raging, the rain falling in torrents, and the wind blowing it in sheets; that on account of the rain being driven against the cab windows, and the accumulation of water on this glass, coupled with the steam rising from the locomotive, caused by the rain descending on it, they were unable to see the

pilot of the locomotive or the track ahead, and were unable to see a man on the track; that they did not see the deceased on the track, and did not know the train had struck anything until they were signaled by the conductor to stop and back up. As to the severity of the storm and the obstruction of the view through the windows of the train by the wind and rain, and the accumulation of water on the glass, they were corroborated by several passengers on the train, some of whom described the rain as almost a cloud-burst, and the wind as having attained almost cyclonic velocity. A passenger who was standing at the rear door of the train and looking south discovered that a man had been run over, and he gave notice of that fact to the conductor, and the train was stopped after it had proceeded about a half mile, and it was then backed up to the point of the accident and the body of the deceased and members of his family carried into Sardis. Some of the witnesses for the plaintiff testified that situated as they were, out in the rain and in an open space, they could see some distance through the storm and rain, and there was also some testimony which tended to show that, while the train was being backed up to the point of the injury, a person looking back south could see some distance down the track.

At the close of all the evidence the appellant requested the court to instruct the jury peremptorily to find for the defendant, and the refusal of the court togran t this instruction is assigned as error.

It is clear from the testimony in this record that the deceased was a trespasser on the railroad track at the time he met his death, and, this being true, the defendant owed him no duty except not to willfully or wantonly injure him after discovering his presence on the track. Counsel for appellee does not dispute this principle, which is established in this state by an unbroken line of decisions; but the contention is made that the testimony for appellee creates a conflict in the evidence from which the jury was warranted in reaching the conclusion that, if the engineer

128 Miss.—27

and fireman were at their post of duty, as they say they were, they could have seen, and in fact did see, the deceased in time to have warned him of his peril and avoided striking him.

We do not agree with this contention. Both the engineer and fireman testified that on account of the driving rain, and the accumulation of mist and water on the glass of the windows through which they were endeavoring to look, they could not see the track ahead, could not see as far as the front of the locomotive, and did not see the deceased. The appellee offered the testimony of certain witnesses to the effect that, situated as they were in an open space, with an unobstructed view, they were able to see an object several hundred feet; but this was not in contradiction of the evidence of the trainmen that, situated as they were, they were unable to see and did not see the deceased, and, in the absence of any evidence in contradiction thereof, we are unable to say that the statement of the facts as given by the engineer and fireman is unreasonable, and we do not think there is any evidence which would warrant a jury in reaching the conclusion that their testimony is untrue.

It follows from these views that we have reached the conclusion that the peremptory instruction to find for the defendant should have been granted, and therefore the judgment of the court below is reversed, and judgment entered here for appellant.

*Reversed, and judgment for appellant.*