317 So.2d 923 (1975)
ILLINOIS CENTRAL GULF RAILROAD CO., a Delaware Corporation, and T.B. Grant
v.
James Albert ISHEE.
No. 48233.
Supreme Court of Mississippi.
September 9, 1975.
Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellants.
Pittman & Nobles, Jackson, L.D. Pittman, Tullos & Tullos, Raleigh, for appellee.
Before RODGERS, SMITH and WALKER, JJ.
WALKER, Justice.
This is an appeal from the Circuit Court of Smith County, Mississippi, wherein one Ishee, appellee, recovered a judgment in the amount of $25,000 against the appellant Railroad and its engineer for injuries sustained as a result of being struck by the appellant's locomotive, while he was lying on the track in an unconscious and intoxicated condition [see appendix] approximately one mile north of the depot in Bay Springs, Jasper County, Mississippi, at about 5:45 p.m. on May 12, 1973.
On May 12, 1973, at about 4:00 or 4:30 in the afternoon, Ishee left his home in his automobile to go to Bay Springs, a driving distance of about three miles, to purchase some cigarettes. About one-quarter of a mile from his home, he ran out of gas and "caught a ride" with some acquaintances *924 headed toward town. From that point, he was unable to shed any light on how he was injured as the next thing that he remembered was waking up in the Jones County Community Hospital at Laurel, Mississippi.
The only eyewitnesses to the accident were the members of the train crew, consisting of the engineer, two brakemen and the conductor.
Grant, the engineer and one of the appellants, testified that after leaving the depot in Bay Springs and prior to reaching the accident scene he gave the standard crossing signals at three Bay Springs crossings which consisted of ringing the bell, blowing two long blasts of the whistle, a short and another long blast. He stated that the train's safety devices had been checked twice that day and were all in good working order.
In describing the accident scene, Grant testified that it occurred approximately 1,000 feet from the nearest crossing and was approximately one mile north of the depot in Bay Springs; that a wooded area was on each side of the track; that the right-of-way was fenced on both sides; that there were no paths either perpendicular or parallel to the railroad tracks at that point; and that there were bushes and weeds along the right-of-way which partially obstructed his view; that he was keeping a lookout ahead when he saw an object on the track; and that the locomotive was traveling at approximately 28 miles per hour and was 200 to 250 feet away when he realized the object was a human being. He described Ishee's position as being approximately 100 feet into a left-hand curve in the railroad tracks lying on his right side, his back to the train, his head hanging over the rail on the inside of the curve, and his feet extending to the west perpendicular to the rail. (This would place Ishee's body on the outside of the tracks and not between the rails). Grant testified that he reacted immediately by putting the train in emergency which he described as meaning "... you lock the brake on everything you've got", and that "... all sanders on both units ... locomotives  sand from all units is sanded automatically"; and, that at the same time he started blowing the horn with numerous short blasts. He testified that even though he was doing everything that he possibly could to stop the train, he was unable to bring it to a complete stop before striking Ishee at a speed of approximately ten miles per hour.
It is not necessary that we discuss the evidence adduced at the trial as to damages and injuries since this case turns on the question of liability.
At the close of the case, the appellants requested a peremptory instruction which was refused; and, after the verdict was returned by the jury, made a motion for a judgment notwithstanding the verdict or in the alternative for a new trial, assigning as grounds therefor, among other things, that the verdict was against the overwhelming weight of the evidence. This motion was overruled.
The appellants assign as error on appeal, among other things, that the trial court erred in not granting their requests for a peremptory instruction or motion for judgment notwithstanding the verdict of the jury. With this, we agree.
The evidence establishes that Ishee was a trespasser or at best a licensee upon the property belonging to the Railroad Company. The duty owed him by appellants, however, was the same whether he was a trespasser or licensee. Cotton v. Quinn, 245 So.2d 593 (Miss. 1971); Roberts v. Mississippi Power & Light Co., 193 Miss. 627, 10 So.2d 542 (1942).
In Gulf, Mobile & Ohio Railroad Company v. Hollingshead, 236 So.2d 393 (Miss. 1970), this Court restated the rule with respect to the duty owed by a property *925 owner to a trespasser where it was held:
Hollingshead was a trespasser on the railroad trestle. It is settled in this State that the servants of a railroad company in charge of its train are under no duty to keep a lookout for trespassers on the railroad track, and are required only to exercise reasonable care to prevent injuring a trespasser after they have discovered and realized his peril. Dickerson v. Illinois C.R.R., 244 Miss. 733, 145 So.2d 913 (1962). The test of responsibility arises when the engineer becomes aware of the presence and peril of the trespasser. Illinois C.R.R. v. Ash, 128 Miss. 410, 91 So. 31 (1922); Louisville, N.O. & T. Ry. v. Williams, 69 Miss. 631, 12 So. 957 (1892). Until made aware of the presence and peril of the trespasser, "there could not be wilful negligence or wanton misconduct toward an unrecognized, undiscerned trespasser." (Emphasis added). (236 So.2d at 395).
The case of Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960), which was an action by a licensee against a garage owner and his employee for injuries to the plaintiff-licensee who, when given permission to install a dimmer switch on a truck on the garage premises, stuck his feet out into the driveway and was in that position for about five minutes when the employee, driving an automobile, blew his horn, but did not see the plaintiff's feet and injured him. In holding that the evidence was insufficient for the jury on the issue of whether the garage owner willfully or wantonly injured plaintiff, the Court said:
The undisputed evidence for plaintiff would not warrant a jury in finding that appellees willfully or wantonly injured him. This is the recognized measure of the duty of a possessor of premises to a licensee. Bishop v. Stewart, 234 Miss. 409, 106 So.2d 899 (1958). Something more is required than mere inadvertence or lack of attention. There must be a more or less extreme departure from ordinary standards of care. The conduct must differ in quality, as well as in degree, from ordinary negligence, and must involve a conscious disregard of a known, serious danger. Prosser, Torts (2d Ed. 1955), Sec. 77. (238 Miss. at 102, 117 So.2d at 458).
The appellee's contention that this Court should abolish the distinction as to the duty owed trespassers, licensees and invitees was laid to rest for the time being in Astleford v. Milner Enterprises, Inc., 233 So.2d 524 (Miss. 1970).
The testimony of the engineer, Grant, as detailed above with reference to facts surrounding the accident, demonstrates that he did everything reasonably within his power to stop the train after discovering Ishee's perilous position. As in Illinois Central Railroad Company v. Ash, 128 Miss. 410, 91 So. 31 (1922), we are unable to say that the statement of facts as given by the engineer and other members of the crew is unreasonable, and we do not think there is any evidence, either physical or testimonial, which would warrant a jury in reaching the conclusion that their testimony was untrue.
The testimony of the witness, Wolverton, as to the results of an experiment conducted by him in November, 1973, some six months after the accident and under significantly different circumstances than those existing at the time of the accident was inadmissible in evidence and the objection thereto should have been sustained. The record discloses by the testimony of witnesses and photographs in evidence that at the time of the accident in May, weeds were growing along the right-of-way quite heavily at the accident scene, while at the time of the experiment, the right-of-way having been cleared, there were but few weeds that would interfere with sighting a person lying on the right-of-way with his head on the rail. Moreover, the experiment was conducted from a stationary stepladder at an elevation of nine feet after Wolverton had told his helper to lie *926 down at a particular point on the railroad track, while the appellant's view at the time of the accident was from a train traveling 28 miles per hour at a time when the engineer was performing all the duties incident to operating a locomotive. From this experiment, Wolverton testified that he could see his helper lying on the tracks from distance of 955 feet.
In order for an experiment of this type to be admissible in evidence, it is not required that all the conditions shall be precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed. As said in Harrison v. Southern Railway Company, 93 Miss. 40, 46 So. 408 (1908), the circumstances of the tests or experiments must be (1) identical, or (2) nearly identical, with those with which the experiments are sought to be compared; and all the authorities are to the effect that these questions are largely within the sound discretion of the trial judge, and that the only effect of a variation between a precise and a substantial reproduction is as to the weight of the experimental evidence rather than its admissibility. Brown v. State, 176 Miss. 448, 169 So. 837 (1936). In the case sub judice, the particular issue to which the test was directed was the distance that Ishee could be seen as he was lying on the railroad right-of-way with his head on the rail. Therefore, the presence of weeds substantially in the amount that existed at the time of the accident was of vital importance to the experiment for it to have had any probative value whatsoever. Moreover, this type of experiment was criticized in Yazoo & M.V.R. Co. v. Huff, 111 Miss. 486, 71 So. 757 (1916), where the Court said:
The plaintiff, by taking certain measurements after the accident, attempted to show that an engineer could have seen the small child a distance of at least five hundred feet. We do not think, however, the actions of the engineer should be viewed in the light of a calm and deliberate test, made by witnesses standing on the track and looking intently at a small child, which they knew was being put upon the track for the very purpose of making the test. The engineer of a ... train has many duties to perform, and it is not unreasonable that he, as he says, did not, in fact, see the object at all until within one hundred and fifty feet of the child, and when it was absolutely too late to prevent the injury. (111 Miss. at 491-492, 71 So. at 758).
We would also point out that the trial court erred in granting instruction no. 6 with reference to the presumption of negligence arising out of the operation of a locomotive, etc. as set forth in Mississippi Code Annotated section 13-1-119 (1972). When the facts surrounding the accident are in evidence, the presumption disappears and negligence must be determined from all the facts. Fayard v. Louisville & N.R. Co., 48 So.2d 133 (Miss. 1950); Louisville & N.R. Co. v. Cuevas, 162 Miss. 521, 139 So. 397 (1932); New Orleans & G.N.R. Co. v. Walden, 160 Miss. 102, 133 So. 241 (1931); Stapleton v. Louisville & N.R. Co., 265 F.2d 738 (5th Cir., 1959).
It is not necessary that we reach the remaining assignments of error.
There is no evidence in this record which would warrant a jury in finding that the appellants willfully or wantonly injured the appellee Ishee or that they failed to use reasonable care after discovering his position of peril; therefore, we are of the opinion that the motion of the appellants for a judgment notwithstanding the verdict of the jury should have been sustained.
The judgment of the lower court is reversed and judgment entered here for the appellants.
Reversed and rendered.
*927 GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, SUGG and BROOM, JJ., concur.

APPENDIX
Q. Where did you get when you got into Mr. Sims' car?
(MR. ISHEE):
......
A. I got into the back seat.
Q. Where did you get out?
A. I don't know.
Q. You don't know where you got out?
A. No, sir.
Q. All right. And you don't remember anything from that instant till you woke up in Community Hospital?
A. I don't remember getting out of the car. I don't remember anything after that until I woke up in the Community Hospital in Laurel, Mississippi.
......
Officer Temple who arrived on the scene shortly after the accident testified that he smelled antiseptic on Ishee's breath; that part of a bottle of Smith's antiseptic was found near Ishee; and that the antiseptic contained alcohol. The locomotive engineer, T.B. Grant, and other witnesses, also testified that they smelled alcohol on the appellee's breath at the scene of the accident.
The doctor who saw Ishee at the emergency room of the Jones County Community Hospital at approximately seven or eight o'clock in the evening on the date of the accident responded to questions on cross-examination as follows:
Q. Now I believe when Mr. Ishee got there you said he was  I jotted this down  "He was incoherent; he was uncooperative; he was raging." Dr. Holder, is it not true that he was so drunk that you had to sober him up before you could find out how much he was hurt?
A. Yes, sir.
Q. In other words, when you first saw the man, in your opinion as an orthopedic surgeon  medical doctor, he was thoroughly and completely drunk?
A. I thought so, yes, sir.