COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-030-CR
 
 
BRYAN 
JEROME MOORE                                                        APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 396TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        Appellant 
Bryan Jerome Moore appeals from his conviction by a jury for the offense of 
knowingly causing injury to a child. Appellant complains in three issues of 
appeal that the trial court committed error (1) when it allowed the use of a 
doll to demonstrate the offense over Appellant’s objection, (2) when it 
allowed into evidence a written statement from a purported learned treatise over 
Appellant’s objection, and (3) when it refused Appellant’s requested jury 
charge regarding the lesser included offense of negligently causing injury to a 
child.  We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
        Appellant 
was indicted for the offense of knowingly causing serious bodily injury to a 
child younger than 15 years of age, L.M., by shaking her, which caused her to 
suffer traumatic brain injury.  The State further alleged that the use of 
Appellant’s hands in shaking L.M. constituted the use of a deadly weapon.  
Appellant pleaded not guilty to the charge and not true to the allegation of a 
use of a deadly weapon.  At trial, Gregory Noone, a Hurst police detective, 
testified that he first interviewed Appellant at Cook Children’s Hospital 
regarding the circumstances of injuries to L.M., a six-month old baby. Appellant 
denied causing the injury or having any knowledge of how L.M. sustained injury.  
Detective Noone interviewed Appellant again at a later date, at which time 
Appellant admitted that he was responsible for causing L.M.’s injuries.  
At the interview, Detective Noone asked Appellant to demonstrate on a doll how 
he caused L.M.’s injuries.  At trial Detective Noone reenacted the 
demonstration on a doll similar to that used by Appellant.  Appellant 
objected to the use of the doll and was overruled.  Detective Noone 
demonstrated how Appellant had shaken L.M. and described how the head 
“whiplashed back and forth several times.”
        Appellant 
testified that he watched L.M. on June 11th, while his wife, Linda, was at work.  
According to Appellant, he realized that L.M. had been sleeping all day and upon 
checking her noticed that she was limp and that her eyes were rolled back in her 
head.  Appellant testified that he spent approximately thirty minutes to an 
hour trying to wake L.M. by “squeezing water on her face” and “patting her 
face.”  L.M. still had not awakened when Linda returned home from work, 
at which time Linda immediately took L.M. to the hospital.
        Appellant 
admitted shaking L.M. on three or four occasions, but denied shaking her during 
June, the month L.M. was admitted to the hospital with her injuries.  Over 
his objection, Appellant was also asked to demonstrate how he had shaken L.M. in 
the past.  Appellant testified and demonstrated that, in an attempt to get 
L.M. to stop crying, he would bounce her on his knee.  Appellant testified 
that when L.M. would not stop crying, the “motion” would become more 
intense, but he continued to only bounce L.M. on his knee.  Appellant 
further testified that when bouncing L.M. on his knee, he supported her head and 
she never came off his leg.  Appellant denied shaking the doll during his 
interview with Detective Noone as forcefully as Detective Noone had 
demonstrated.  Appellant testified that the way he had demonstrated on the 
doll in the courtroom was the same way he had shaken the doll during his 
interview with Detective Noone.
        During 
the State’s cross-examination, the prosecutor took the doll from Appellant and 
shook the doll as Detective Noone had demonstrated.  Appellant agreed that 
this demonstration by the State was how Detective Noone had shaken the doll. 
Appellant’s counsel did not object to the prosecutor’s shaking of the doll 
at that time.  However, Appellant’s counsel did object to the use of the 
doll during the State’s closing argument.  During closing, the State 
argued that “anyone knows if you shake a baby like this, like what Detective 
Noone showed you that Bryan Moore showed him on June 29th, what do 
you know is going to happen? You’re not doing that for the baby’s 
welfare.”  Appellant renewed his objection to the use of the doll and was 
overruled.
        At 
trial Dr. Howard Kelfer, a child neurologist, testified that he had examined a 
CAT scan of L.M.’s brain taken upon L.M.’s admission to the hospital.  
Dr. Kelfer testified that L.M. had received a “traumatic brain injury” and 
the trauma had probably occurred on several different occasions.  Dr. 
Kelfer further testified that although L.M. was over two years old, she was 
unable to walk and her language skills were not developing.  Additionally, 
Dr. Kelfer explained that L.M. suffered from “severe weakness on the right 
side of her body” and seizures, which were not able to be completely 
controlled by medication.  Dr. Kelfer also testified that because of 
L.M.’s brain damage, she will be unable to attend school in a regular 
classroom setting.  The jury found Appellant guilty of knowingly causing 
injury to a child and further found that Appellant used a deadly weapon, his 
hand, in the commission of the offense.  The jury sentenced Appellant to 
forty years’ confinement.
Play Doll Simulation
        In 
his first issue, Appellant complains that the trial court erred by allowing the 
State to use a play doll to demonstrate the offense because its probative value 
was substantially outweighed by the danger of unfair prejudice.  Appellant 
complains that it was error for the trial court to allow the use of the doll for 
demonstration purposes during the State’s examinations of Detective Noone and 
Appellant and during the State’s closing argument.
        An 
appellate court reviews a trial court’s decision on whether to admit or 
exclude evidence under an abuse of discretion standard of review.  Green 
v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. denied, 
520 U.S. 1200 (1997); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. 
Crim. App. 1990)   A trial court’s determination on admissibility of 
evidence will not be disturbed unless there is a clear abuse of discretion. Werner 
v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986).  The trial 
court’s ruling will be upheld as long as it is within the “zone of 
reasonable disagreement.”  Montgomery, 810 S.W.2d at 391.
        Under 
Rule 403 of the Texas Rules of Evidence, evidence, although relevant, may be 
excluded if its probative value is substantially outweighed by the danger of 
unfair prejudice, confusion of the issues, or misleading the jury; by 
considerations of undue delay; or by needless presentation of cumulative 
evidence. Tex. R. Evid. 403. Rule 403 favors 
admissibility and presumes that relevant evidence will be more probative than 
prejudicial.  Rayford v. State, 125 S.W.3d 521, 529 (Tex. Crim. App. 
2003), cert. denied, 125 S. Ct. 39 (2004).
        Appellant 
relies on United States v. Gaskell, 985 F.2d 1056 (11th Cir. 1993), to 
support his argument that the use of the doll to demonstrate how L.M. was shaken 
should have been excluded from evidence.  In Gaskell, a prosecution 
expert demonstrated shaken baby syndrome on an infant mannequin and during the 
demonstration “forcefully shook the doll,” causing the head of the doll to 
swing back and forth.  Id. at 1059.  The expert testified that 
the neck of the doll used in the demonstration was stiffer than an infant’s; 
so greater force was necessary to cause the movement of the neck . Id.  
The Gaskell court stated that although a demonstration does not need to 
be identical to the original event, it “must be so nearly the same . . . as to 
afford a fair comparison.”  Id. at 1060.  The court also 
noted that the offering party must lay a proper foundation showing the 
similarity between the demonstration and the event in question.  Id.  
The Gaskell court held that the conditions of the demonstration were not 
sufficiently similar to the act in question because the doll’s neck was 
stiffer than an infant’s, thereby requiring more force to demonstrate shaken 
baby syndrome.  Id.  Since the demonstration was 
“substantially dissimilar” to the act in question, the probative value of 
the demonstration was outweighed by its prejudicial effects:  “By 
displaying a greater degree of force than the level required to produce shaken 
baby syndrome in a seventh-month-old infant and by arbitrarily selecting a 
number of oscillations, the demonstration tended to implant a vision of 
Gaskell’s actions in the jurors’ minds that was not supported by any factual 
basis for the demonstration.”  Id. at 1061.
        Although 
the present case also involves the use of a doll for demonstration purposes, it 
is distinguishable from Gaskell.  In Gaskell, the court found 
that the doll itself was dissimilar to an infant in that the doll’s neck was 
stiffer, thus requiring more forceful shaking.  985 F.2d at 1060.  
This difference was noted by defense counsel when objecting to the 
demonstration.  Id.  In the present case, the demonstration did 
not purport to show how the infant, L.M., was shaken but, rather, to show how 
Appellant shook the doll in the interview with Detective Noone.  There was 
no objection that the doll used during trial was dissimilar to the doll used by 
Appellant when he previously showed how he had shaken L.M.  Moreover, the 
State, in handing the doll to Detective Noone during trial, specifically asked 
him whether the doll used in court was similar to the doll used during his 
interview with Appellant, and he replied that it was similar.  Therefore, 
the similarity between the use of the doll during the interview and the 
demonstration with the doll during trial meets Gaskell’s requirement 
that the conditions must be similar enough to provide a fair comparison.
        Additionally, 
in Gaskell, the expert testified that his demonstration of shaken baby 
syndrome was based on the demonstration of a police officer in an unrelated 
case.  985 F.2d at 1060. The court found that the expert’s demonstration 
was not supported by any facts because neither the “degree of force [nor] the 
number of oscillations bore any relationship to the defendant’s actions.”  
Id. at 1061.  In contrast, Detective Noone’s demonstration in this 
case was based on his own interview with Appellant. During this interview, 
Appellant used a similar doll to demonstrate to Detective Noone how he had 
shaken L.M. in the past.  Detective Noone’s demonstration was based on 
this firsthand knowledge as an eyewitness gained during his interview with 
Appellant.  The demonstration in court therefore was based on facts that 
did bear a substantial relationship to defendant’s actions.  We hold that 
the trial court did not abuse its discretion in allowing the use of the doll by 
Detective Noone.
        Likewise, 
the trial court did not abuse its discretion in allowing the Appellant to use 
the doll during the State’s cross-examination.  Appellant demonstrated 
that he had bounced L.M. on his knee in the past in an attempt to calm her down.  
Appellant testified that when he could not get L.M. to stop crying, he became 
frustrated and angry. Appellant stated that “the motion starts to reflect the 
anger or whatever that – that I’m feeling, the frustration that I’m 
feeling.  So I’m saying, hey, come on, be quiet, come on. So like it gets 
progressively a bit more intense.”  Based on Appellant’s testimony, the 
foundation was laid that his demonstration with the doll in the courtroom did 
bear a “similarity of circumstances and conditions” to his actions with L.M.  
Gaskell, 985 F.2d at 1060.  Since Appellant testified that he would 
grow frustrated and angry and that his “motion” with L.M. would grow more 
intense, it was appropriate to request that he demonstrate on a doll how he 
would react in these situations.  It also afforded Appellant the 
opportunity to dispute the earlier demonstration by Detective Noone and to 
present to the jury his version of how he handled L.M. As Appellant was 
testifying as to his own conduct, his demonstration on the doll in the courtroom 
did afford a fair comparison to the act in question.  See Gaskell, 
985 F.2d at 1060 (“Although the conditions of the demonstration need not be 
identical to the event at issue, ‘they must be so nearly the same in 
substantial particulars as to afford a fair comparison in respect to the 
particular issue to which the test is directed.’” (quoting Ill. Cent. 
Gulf R.R. Co. v. Ishee, Miss., 317 So. 2d 923, 926 (Miss. 1975))).  We 
hold that the trial court did not abuse its discretion in allowing the use of 
the doll by Appellant.
        Additionally, 
the trial court did not err in overruling Appellant’s objection to the use of 
the doll during the State’s closing argument. During closing argument, the 
State is permitted to summarize the evidence.  See Cannon v. State, 
668 S.W.2d 401, 404 (Tex. Crim. App. 1984) (discussing the four permissible 
areas of jury argument: (1) summation of the evidence; (2) reasonable deduction 
from the evidence; (3) answer to argument of opposing counsel; and (4) plea for 
law enforcement).  Because the evidence presented at trial included 
witnesses’ demonstrations with the doll, the State’s use of the doll in its 
closing argument to summarize the evidence was proper.  See Vera v. 
State, 709 S.W.2d 681, 687 (Tex. App.–San Antonio 1986, pet. ref’d) 
(allowing prosecutor to use doll during closing argument in sexual assault 
case).  The trial court did not abuse its discretion in allowing use of the 
doll during State’s closing argument.
        Having 
found that the use of the doll was relevant to Appellant’s actions, we must 
now determine whether the probative value is substantially outweighed by the 
danger of unfair prejudice.  A presumption of admissibility applies to all 
relevant evidence, and a trial judge may exclude such evidence only when there 
is a “clear disparity between the degree of prejudice of the offered evidence 
and its probative value.”  Mozon v. State, 991 S.W.2d 841, 847 
(Tex. Crim. App. 1999).  “Unfair prejudice does not, of course, mean that 
the evidence injures the opponent's case – the central point of offering 
evidence.  Rather it refers to an undue tendency to suggest decision on an 
improper basis, commonly, though not necessarily, an emotional one.”  Cohn 
v. State, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993).
        The 
use of the doll during trial clearly related to Appellant’s actions as 
demonstrated through Appellant’s own testimony and the testimony of Detective 
Noone, based on firsthand knowledge gained during his interview with Appellant.  
Likewise, the doll used at trial was shown to be similar to the doll used during 
Detective Noone’s interview.  As such, we cannot say that the probative 
value of the use of the doll was substantially outweighed by the danger of 
unfair prejudice.  Therefore, the trial court’s ruling was not an abuse 
of discretion.
        Appellant’s 
first issue is overruled.
Hearsay
        Appellant 
complains in his second issue that the trial court erred in admitting into 
evidence a hearsay statement contained in a writing offered as a learned 
treatise.  Appellant objected to the State’s introduction of a “policy 
statement” from the American Academy of Pediatrics during direct examination 
of one of its expert witnesses, Dr. Howard Kelfer.  Appellant argues that 
the “policy statement” was inadmissible hearsay.
Although 
Appellant objected to the admission of the written statement during the 
testimony of Dr. Kelfer, he failed to object when the statement was called to 
the attention of a subsequent witness.  The State again presented the 
“policy statement” in the following exchange with witness Dr. Dave Donahue, 
an expert in pediatric neurosurgery:
   
Q. Are you familiar with the American Academy of Pediatrics and their policy 
statement with regard to shaken-baby syndrome?
A. 
Yes, sir.
 
Q. 
Are you aware with respect to the fact that they say this is a violent act? 
Would you agree with that?
A. 
Yes, sir.
 
Q. 
Would you also agree with their statement or their position that anybody 
observing this type of violence or act would immediately recognize it as 
dangerous and likely to kill the child?
A. 
Unless they came from outer space.

 
        Appellant 
did not object to the use of the “policy statement” in Dr. Donahue’s 
testimony.  To preserve error, a party must continue to object each time 
the objectionable evidence is offered.  Fuentes v. State, 991 S.W.2d 
267, 273 (Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999); Ethington 
v. State, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991).  A trial 
court’s erroneous admission of evidence will not require reversal when other 
such evidence was received without objection, either before or after the 
complained-of ruling.  Leday v. State, 983 S.W.2d 713, 718 (Tex. 
Crim. App. 1998); Johnson v. State, 803 S.W.2d 272, 291 (Tex. 
Crim. App. 1990), cert. denied, 501 U.S. 1259 (1991), overruled on 
other grounds by Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 
1991).  This rule applies whether the other evidence was introduced by the 
defendant or the State. Leday, 983 S.W.2d at 718.
        Accordingly, 
Appellant’s failure to object to the questioning of Dr. Donahue regarding the 
American Academy of Pediatrics statement waived any error in the admission of 
the statement during the testimony of Dr. Kelfer.  Appellant’s second 
issue is overruled.
Jury Charge
        Appellant 
complains in his third issue that the trial court erred in refusing to charge 
the jury on the lesser included offense of criminal negligence.  The trial 
court’s charge instructed the jury to find Appellant guilty if they found 
beyond a reasonable doubt that he “knowingly” caused serious bodily injury 
to L.M.  The charge also instructed that if the jury did not find that 
Appellant “knowingly” caused serious bodily injury, they should acquit of 
that offense and “next consider whether he is guilty of the offense of 
recklessly causing injury to a child.”  Therefore, Appellant received a 
lesser included offense instruction on recklessness, but did not receive his 
requested instruction on criminal negligence.  The jury found Appellant 
guilty of knowingly causing injury to a child.
        To 
determine whether a jury must be charged on a lesser included offense, we apply 
a two-step analysis. Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 
1998).  The first step is to decide whether the offense is a “lesser 
included offense” as defined in article 37.09 of the code of criminal 
procedure. Tex. Code Crim. Proc. Ann. 
art. 37.09 (Vernon 1981); Moore, 969 S.W.2d at 8.  “An offense is 
a lesser included offense if . . . it differs from the offense charged only in 
the respect that a less culpable mental state suffices to establish its 
commission.” Tex. Code Crim. Proc. Ann. art. 
37.09(3).  Appellant was indicted for the offense of knowingly causing 
serious bodily injury to a child.  A person commits injury to a child “if 
he intentionally, knowingly, recklessly, or with criminal negligence, by act or 
intentionally, knowingly, or recklessly by omission, causes to a child . . . 
serious bodily injury.” Tex. Penal Code Ann. § 22.04(a)(1) 
(Vernon 2003).  Because the offense encompasses all culpable mental states, 
criminally negligent infliction of serious bodily injury is a lesser included 
offense of knowing infliction of serious bodily injury.  Therefore, the 
first step of our analysis is satisfied.
        The 
second step requires an evaluation of the evidence to determine whether there is 
some evidence that would permit a rational jury to find that the defendant is 
guilty only of the lesser offense, and not of the greater.  Feldman v. 
State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Moore, 969 S.W.2d 
at 8.  The evidence must be evaluated in the context of the entire 
record.  Moore, 969 S.W.2d at 8.  There must be some evidence 
from which a rational jury could acquit the defendant on the greater offense 
while convicting him of the lesser included offense.  Id.  The 
court may not consider whether the evidence is credible, controverted, or in 
conflict with other evidence.  Id.  If there is evidence from 
any source that negates or refutes the element establishing the greater offense, 
or if the evidence is so weak that it is subject to more than one reasonable 
inference regarding the aggravating element, the jury should be charged on the 
lesser included offense.  Schweinle v. State, 915 S.W.2d 17, 19 
(Tex. Crim. App. 1996); Saunders v. State, 840 S.W.2d 390, 391-92 (Tex. 
Crim. App. 1992).
        The 
Texas Penal Code defines “knowingly” as follows:
  
A person acts knowingly, or with knowledge, with respect to the nature of his 
conduct or to circumstances surrounding his conduct when he is aware of the 
nature of his conduct or that the circumstances exist.  A person acts 
knowingly, or with knowledge, with respect to a result of his conduct when he is 
aware that his conduct is reasonably certain to cause the result.
 
 
Tex. Penal Code Ann. § 6.03(b) (Vernon 
2003).
 
        The 
Penal Code defines “recklessly” as follows:
 

A person acts recklessly, or is reckless, with respect to circumstances 
surrounding his conduct or the result of his conduct when he is aware of but 
consciously disregards a substantial and unjustifiable risk that the 
circumstances exist or the result will occur.  The risk must be of such a 
nature and degree that its disregard constitutes a gross deviation from the 
standard of care that an ordinary person would exercise under all the 
circumstances as viewed from the actor’s standpoint.

Id. 
§ 6.03(c).

        The 
Penal Code defines “criminal negligence” as follows:
  
A person acts with criminal negligence, or is criminally negligent, with respect 
to circumstances surrounding his conduct or the result of his conduct when he 
ought to be aware of a substantial and unjustifiable risk that the circumstances 
exist or the result will occur.  The risk must be of such a nature and 
degree that the failure to perceive it constitutes a gross deviation from the 
standard of care that an ordinary person would exercise under all the 
circumstances as viewed from the actor’s standpoint.

Id. 
§ 6.03(d).
        Injury 
to a child is a result oriented crime, requiring a culpable mental state that 
relates to the result of the conduct.  Banks v. State, 819 S.W.2d 
676, 678 (Tex. App.—San Antonio 1991, pet. ref’d).  The jury charge in 
the present case properly focused on the result of the alleged conduct.  
Therefore, in order to find Appellant guilty of knowingly causing serious bodily 
injury, the jury had to find that he was aware that his conduct was reasonably 
certain to cause the result. Tex. Penal Code Ann. § 6.03(b). In 
order to find Appellant guilty of recklessly causing serious bodily injury, the 
jury would likewise have had to find that Appellant was aware of, but that he 
consciously disregarded, a substantial and unjustifiable risk that the result 
would occur. Id. § 6.03(c). In order to be entitled to the requested 
jury instruction, we must determine whether there is some evidence that would 
permit a rational jury to find that Appellant is guilty of only criminally 
negligent injury to a child. Moore, 969 S.W.2d at 8.  The key to 
criminal negligence is the failure of the actor to perceive the risk.  Lewis 
v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).  Therefore, in 
order to receive a jury charge on criminal negligence, there must be some 
evidence in the record that the Appellant was unaware of the risk of his 
conduct.  Mendieta v. State, 706 S.W.2d 651, 653 (Tex. Crim. App. 
1986); Cooks v. State, 5 S.W.3d 292, 297 (Tex. App.—Houston [14th 
Dist.] 1999, no pet.).
        Proof 
of a culpable mental state generally relies upon circumstantial evidence.  Stadt 
v. State, 120 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2003, pet. 
granted).  Ordinarily, it must be inferred from the acts, words, and 
conduct of the accused and the surrounding circumstances.  Id.  
The issue of whether one is aware of the risk or simply fails to perceive it is 
a conclusion to be drawn through inference from all the circumstances by the 
trier of fact.  Id.  Appellant refers us to two pieces of 
testimony as arguably raising some evidence that he was unaware of the risk of 
his conduct.  First, Appellant points to the cross-examination of Detective 
Noone, who was asked to explain the mental states of reckless and negligence:
  
Q. And reckless – understanding you deal with the Penal Code every day, so you 
understand that some of the different states of minds or mens rea involved in 
crimes, correct?
A. 
Yes.
 
Q. 
And reckless is a substantial, unjustified – I can’t think of the word I 
want to use right now – yeah, a disregarding of the substantial and 
unjustifiable risk, correct?
A. 
Basically should have known.
 
Q. 
Should have known.  Should have known.  And that’s negligence, 
though, should have known.  There’s a standard of negligence and, hey, a 
reasonable person does this and you should have known to do that, correct?
A. 
Uh-huh.
 
Q. 
And then – is that correct?
A. 
I’m sorry.
 
Q. 
Negligence is a should have known. It’s a reasonable person standard?
A. 
Well, negligence is saying that a reasonable person would have – wouldn’t 
have put these things into play.
 
Q. 
And the, of course, the next thing is reckless, which is how you filed this 
case, correct?
A. 
Uh-huh.
 
Q. 
And under those circumstances, it’s a disregard of substantial and 
unjustifiable risk, correct?
A. 
I’d have to, again, look at the –
 
Q. 
A gross deviation –
A. 
— the language on that.
 
Q. 
A gross deviation from the standard of care, correct?
A. 
I’ll agree with that pending a review back on the Penal Code definitions.

        Appellant 
argues that this exchange provides some evidence that Appellant was only 
negligent because, as he argues, that is what Detective Noone concluded after 
his initial investigation.  We do not agree.  Detective Noone was 
asked to clarify a legal definition, which unfortunately, lacked clarity.  
He did not testify that he thought Appellant was negligent, as Appellant 
argues.  Further, Detective Noone, after conducting an initial 
investigation, prepared an offense report listing the offense as a “reckless 
crime.”  However, the grand jury indicted Appellant for knowingly causing 
serious bodily injury to a child.  Therefore, we do not see how this brief 
exchange regarding the definitions of reckless and negligence constitutes 
“some evidence directly germane to a lesser-included offense.”  Hampton 
v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003).
        Second, 
Appellant points to his testimony that when he shook L.M. he was not 
“consciously aware” of anything, except trying to stop her from crying. 
However, Appellant testified on cross-examination:
  
Q. All right. Now, with respect to June, the reason that you’re so certain 
that you didn’t shake [L.M.] in June of 2001 is because you knew you had a 
temper and you knew you were short with [L.M.]; isn’t that true?
A. 
I didn’t want to have any more frustrated episodes.
 
Q. 
Right. You didn’t want to shake her again, right?
A. 
I didn’t want to hurt my child.
 
Q. 
Okay. And you knew that by shaking her you could hurt her, right?
A. 
I knew that if I continued to handle my child when I was frustrated or angry, 
that ultimately it could lead to some kind of injury, which is why I ceased to 
care for her.
        Appellant 
further testified on cross-examination:
  
Q. You were afraid you were going to hurt her and so that’s why you wanted 
Linda Gray [L.M.’s grandmother] to continue to care for that child; isn’t 
that right?  Yes or no, sir?
A. 
That’s correct.
 
        Appellant 
also provided a written statement to Detective Noone, which was admitted into 
evidence and read to the jury by the detective.  In the statement, 
Appellant states that “[o]n four occasions from the time [L.M.] was three 
months old until her present age, I lost my temper and shook her too 
hard.”  The statement continues, “I do not ever want to harm my child 
or anyone else ever again.”
        Dr. 
Donahue also gave his opinion that anyone would immediately recognize the act of 
shaking a baby as dangerous, “[u]nless they came from outer space.”  
Further, the State asked Appellant if he saw a baby being shook in the manner 
demonstrated by Detective Noone, would he “recognize that act as being [an] 
act that could seriously injury (sic) or kill a child at that age,” to which 
Appellant replied yes.
        This 
evidence leads us to the conclusion that not only did Appellant believe his 
treatment of L.M. was wrong, but if he continued, the result of his conduct 
would lead to her injury.  Appellant admitted shaking L.M. in the past 
because he wanted to stop her from crying.  He also testified that he 
ceased to be her primary caretaker because he feared she would suffer injury if 
he experienced another “frustrated episode.”  Therefore, whether 
Appellant was “not consciously aware” of anything except trying to stop L.M. 
from crying when he began to shake her, he must have become aware of a risk of 
injury before he stopped shaking her.  His thought process with regard to 
what the risk of the result could be is more relevant than what his immediate 
intent was regarding the shaking.  See Schroeder v. State, 123 
S.W.3d 398, 400 (Tex. Crim. App. 2003) (“result of conduct” offense means 
that the culpable mental state relates to the cause of the result); Still v. 
State, 709 S.W.2d 658, 661 (Tex. Crim. App. 1986) (evidence showed that 
defendant, after perceiving the risk in pointing a loaded gun at his wife, 
continued to point the gun at her even while he attempted to uncock it); Cooks, 
5 S.W.3d at 296-97 (finding no evidence that defendant charged with manslaughter 
was not aware of the risk; instead evidence that defendant was a licensed 
driver, drove almost one hundred miles per hour in a fifty-five mile per hour 
zone, car with which he collided split in half, and reconstruction experts 
estimated that he was still going seventy miles per hour after the collision 
only showed a conscious disregard of the risk); Bergeron v. State, 981 
S.W.2d 748, 752-53 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (finding 
defendant’s explanation that he was trying to ward off victim with knife but 
stabbed him in the process did not indicate that he failed to perceive the risk 
that the victim might be seriously injured or killed).
        Based 
on this evidence, we conclude that no rational jury could find that if Appellant 
was guilty, he was guilty only of the lesser included offense.  It was 
therefore not error for the trial court to refuse to include the lesser included 
offense.  Appellant’s third issue is overruled.
CONCLUSION
        Having 
overruled all Appellant’s issues, we affirm the trial court’s judgment.
 

                                                          ANNE 
GARDNER
                                                          JUSTICE

PANEL 
A:   CAYCE, C.J.; GARDNER and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
December 9, 2004